# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| UNITED STATES OF AMERICA | § | |
| --- | --- | --- |
| | § | CRIMINAL ACTION H-12-614-4 |
| v. | § | |
| | § | CIVIL ACTION H-16-3766 |
| SAMUEL CASTRO-FLORES | § | |

**MEMORANDUM OPINION AND ORDER**

Defendant Samuel Castro-Flores, proceeding *pro se*, filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. (Docket Entries No. 492, 493.) The Government filed a motion to dismiss (Docket Entry No. 503), to which Defendant filed a response (Docket Entry No. 506).

Having considered the motions, the response, the record, and the applicable law, the Court GRANTS the motion to dismiss, DENIES the section 2255 motion, and DISMISSES this lawsuit for the reasons that follow.

*Background and Claims*

Defendant was found guilty of the following offenses: hostage taking and conspiracy to commit hostage taking; harboring, concealing, and shielding from detection undocumented aliens within the United States for the purpose of commercial advantage and private financial gain, and conspiracy to harbor, conceal, and shield from detection undocumented aliens within the United States in any place, including any building or means of transportation; illegal re-entry by a previously deported alien after an aggravated felony conviction; conspiracy to transport undocumented aliens within the United States by means of

transportation; transportation of undocumented aliens within the United States for the purpose of commercial advantage and private financial gain; conspiracy to carry and use a firearm during and in relation to a crime of violence; and brandishing a firearm during and in relation to a crime of violence. (Docket Entry No. 411.) He was sentenced to life imprisonment. *Id*. The convictions and sentences were affirmed on direct appeal. *United States v. Castro-Flores*, C. A. No. 15-20053 (5th Cir. May 19, 2016).

Defendant filed the instant section 2255 motion for relief on or about December 20, 2016, raising the following claims for ineffective assistance of counsel:

1. Trial counsel failed to communicate or negotiate a plea offer or cooperation benefits following the Government's plea offer;

2. Trial counsel failed to determine if the Government notified the Mexican Consulate of Defendant's criminal prosecution;

3. Trial counsel failed to protect Defendant's speedy trial rights; and

4. Appellate counsel was ineffective in failing to challenge the 18 U.S.C. § 942(c) firearm convictions under *Johnson v. United States*.

The Government argues that these claims have no merit and that the section 2255 motion should be denied.

## *Legal Standards*

Generally, there are four grounds upon which a defendant may move to vacate, set aside, or correct his sentence pursuant to section 2255: (1) the imposition of a sentence in violation of the Constitution or the laws of the United States; (2) a lack of jurisdiction of the

district court that imposed the sentence; (3) the imposition of a sentence in excess of the maximum authorized by law; and (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). Section 2255 is an extraordinary measure, and cannot be used for errors that are not constitutional or jurisdictional if those errors could have been raised on direct appeal. *United States v. Stumpf*, 900 F.2d 842, 845 (5th Cir. 1990). If the error is not of constitutional or jurisdictional magnitude, the movant must show the error could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994).

### *Ineffective Assistance of Trial Counsel*

The United States Supreme Court's decision in *Strickland v. Washington* provides the familiar two-pronged test for establishing a claim of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. 668, 687 (1984).

A court need not address both components of the inquiry if the defendant makes an insufficient showing on one. *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure

to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim."). In the context of sentencing, the petitioner must demonstrate a reasonable probability that, but for counsel's errors with respect to sentencing matters, he would have received less time in prison. *United States v. Grammas*, 376 F.3d 433, 438 (5th Cir. 2004).

A counsel's performance is strongly presumed to fall within the wide range of reasonable professional assistance. *Premo v. Moore*, 562 U.S. 115, 121 (2011). To overcome that presumption, a habeas petitioner must "show that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Id*. at 121–22 (internal quotations omitted). "[T]he standard for judging counsel's representation is a most deferential one." *Id*. at 122. "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Id*.

Defendant claims that trial counsel was ineffective in the following three particulars.

*Plea Offer*

Defendant contends that trial counsel should have communicated or negotiated a plea offer or cooperation benefits after the Government made its offer. Specifically, he argues that counsel wrongfully advised him to reject a plea agreement for 96 months' imprisonment purportedly offered by the Government. He further claims that, had counsel properly advised him, he would have accepted the plea agreement because it provided a more favorable sentence than what he received at trial.

In responding to this claim, trial counsel submitted an affidavit to this Court in which he testified, in relevant part, as follows:

> Mr. Castro-Flores is mistaken that there was a plea offer for 96 months. The only plea offer was to Count One; there was never any talk of a (c)(1)(C) that would correspond to a particular sentence as Castro-Flores contends.
>
> This issue was taken up at the Pretrial Conference held on February 24, 2014:
>
> > AUSA: Before we start we just want to put one thing on the record, given that we do have a trial pending on the rest of the indictment.
> >
> > THE COURT: Right.
> >
> > AUSA: And we just want to memorialize the last plea offer that we made approximately two weeks ago to the defendant, which we presume, of course, was not accepted; and that was if he pled guilty to Count 1 of the indictment, we would recommend dismissal of the remaining counts. And Count 1 is the hostage taking conspiracy. And if he pled to that we'd recommend dismissal of the remaining counts, and essentially that was it. There would still be the possibility of some type of cooperation, but we didn't discuss details of that.
> >
> > But that's all. We just wanted to put that on the record going forward in the event that somehow that would potentially become an issue later on.
> >
> > THE COURT: All right. With one clarification: You would also dismiss the illegal reentry charge, all of the other counts of the indictment?
> >
> > AUSA: Yes. And that's why we wanted to bring it up now before he would plea[d] to that.

5

> THE COURT: [Counsel], you have passed this on to your client, I presume?
>
> DEFENSE COUNSEL: Yes.
>
> THE COURT: All right. And it's your client's wish to plead guilty to the illegal reentry charge and to go to trial on the other counts of the indictment; is that correct?
>
> DEFENSE COUNSEL: Yes. That's correct.
>
> THE COURT: All right. Mr. Castro-Flores, is that correct?
>
> DEFENDANT: Yes, sir.

(Docket Entry No. 499, pp. 1–2.) Trial counsel further testified that the plea offer for Count 1 was conveyed to Defendant, along with all other discovery and pleadings in the case:

> I met with Castro-Flores repeatedly during my representation of him. I do not speak Spanish; every time I visited in prison I took one of this Court's certified translators and, on one occasion, a local attorney named Tom Berg came to FDC to translate.
>
> On February 20, 2014, Castro-Flores signed [the following form] attesting that he had seen all discovery, motions, and pleadings in this case before proceeding to trial; the translator also signed this document attesting that it had been specifically translated:
>
>> Statement Regarding Plea Offer
>>
>> I, Samuel Castro-Flores, attest that my [trial attorneys] have conveyed to me an offer to plea[d] guilty to one count of the Indictment. However, *I do not want to plead guilty, as I am innocent* and am set to start trial on February 24.
>> I know that I have the right to testify, but I may elect not to.

6

> My lawyers have shown me every motion and pleading filed in this case over the past 1.5 years. I have reviewed discovery (pictures; spreadsheets, etc. . .) on a computer in the lab on the top floor of FDC Houston with my lawyers and a translator.
>
> This statement was read to me in Spanish by an interpreter on February 20, 2014.

(Docket Entry No. 499, p. 2–3, emphasis added.)

As an initial observation, the Court notes that Defendant's allegation of a 96-month plea offer from the Government is non-specific as well as unsupported in the record. At the pretrial conference held February 24, 2014, the Government stated in open court that it had offered to dismiss all other counts if Defendant pleaded guilty to Count 1 of the indictment. (Docket Entry No. 462, p. 4.) However, Defendant himself agreed on the record that he wished to plead guilty only as to Count 13 and proceed to trial on the remaining charges. *Id.*, pp. 5, 9. No mention was made by any party of a 96-month plea offer. Nor was a 96-month plea offer referenced in the Statement of Plea Offer signed by Defendant on February 20, 2014. In the Statement, Defendant professed his belief in his innocence and declined the Government's offer to dismiss all other charges in exchange for his plea of guilty as to Count 1. (Docket Entry No. 499, p. 2–3.) The record does not support Defendant's assertions that trial counsel failed to convey a 96-month plea offer to Defendant or that counsel subsequently advised him to reject a 96-month plea offer.

Even assuming the Government had made a 96-month plea offer prior to trial, Defendant fails to establish objectively a reasonable probability that, but for counsel's

alleged advice to reject the offer, he would have pleaded guilty. Defendant's own allegations in this section 2255 proceeding fail to define the parameters of the "96-month offer" or the count or counts covered by the alleged offer. If Defendant is claiming that the Government offered the 96-month sentence in exchange for his plea to Count 1, then the Court is not persuaded by his self-serving assertions. Defendant unequivocally proclaimed in his statement of February 20, 2014, that "I do not want to plead guilty, *as I am innocent* and am set to start trial on February 24, 2014." (Docket Entry No. 499, p. 3, emphasis added.) Moreover, Defendant expressed surprise and disbelief when the jury subsequently found him guilty on all counts of the indictment: "I didn't really understand why the jury failed to see that I was not involved like the others testified. Why they didn't see that Leonel was the boss and that Virgilio blamed me only to save his cousin." (Docket Entry No. 493, p. 2.) Defendant complained that the jury was unaware he "had only been there to fix the air conditioning." *Id.*[1]

Taken as a whole, these statements evince to this Court that Defendant believed he was innocent, that he had no interest in pleading guilty to Count 1, and that trial counsel did not persuade him to reject the plea offer. Neither Defendant nor the record provides any objective evidence of a reasonable probability that, but for the alleged ineffective assistance

---

[1] It is undisputed that Defendant was arrested at the Amblewood house while working on the air conditioning. However, testimony from Government witnesses established that Defendant's activities regarding the Amblewood house and its occupants went well beyond a one day appearance to fix the air conditioning. Indeed, various witnesses testified throughout the trial that Defendant was known as "Chamuco" or "The Boss."

of trial counsel, Defendant would have pleaded guilty to Count 1. No meritorious grounds for habeas relief are presented.

*Mexican Consulate*

Defendant next contends that trial counsel failed to determine whether the Government had properly notified the Mexican Consulate upon his arrest, indictment, detention or conviction, pursuant to the Vienna Convention. In responding to this claim, trial counsel testified in his affidavit to the following:

> I did not contact the Mexican Consulate. I visited often with Mr. Castro-Flores at both Joe Corley and FDC; he never asked me to contact the Mexican Consulate. While I would have contacted the Consulate if he had asked me to, I do not know what value that office would have added. To-wit, Mr. Castro-Flores had lived in various states in the U.S. before and he had previously plead guilty to a human trafficking offense in the Southern District of Texas. There was no exculpatory evidence in, or from, Mexico that would have aided his defense. The material witnesses had a local lawyer; I interviewed several of them by phone from the Houston office of their attorney. In all but one of my meetings with Castro-Flores, I was accompanied by one of this Court's certified Spanish language translators; the one time such translator could not attend, a local attorney fluent in Spanish named Tom Berg came to translate. In light of these conditions, I do not know what interpretative or investigative assistance the consulate would have furnished.

(Docket Entry No. 499, p. 4.) Defendant had no protected liberty interest in having the Government contact the Mexican Consulate on his behalf. The Fifth Circuit Court of Appeals has ruled that Article 36 of the Vienna Convention, from which Defendant's argument arises, does not create an individually enforceable right. *United States v. Jimenez-Nava*, 243 F.3d 192, 198 (5th Cir. 2001); *see also Rocha v. Thaler*, 619 F.3d 387,

407 (5th Cir. 2010). The Supreme Court subsequently adopted this view. *See Medellin v. Texas*, 552 U.S. 491 (2008); *see also Garcia v. Texas*, 564 U.S. 940 (2011). Neither the United States Supreme Court nor the Fifth Circuit has determined that the Vienna Convention, standing alone, confers any private right of action or individually enforceable rights analogous to those arising from the United States Constitution. Consequently, Defendant cannot claim deprivation of a right that he was never afforded in the first place.

Even assuming trial counsel were deficient in not ensuring contact with the Mexican Consulate, Defendant shows no actual prejudice. Defendant fails to establish that, but for counsel's omissions, there is a reasonable probability that the result of Defendant's trial would have been different. Deficient performance and actual prejudice under *Strickland* are not shown, and habeas relief is unwarranted

*Speedy Trial*

Defendant argues that trial counsel "facilitated" violations of his speedy trial rights. Specifically, Defendant contends that the Government failed to bring him to trial within 70 days, and that "excluding all delays up to through the Fifth Superseding Indictment, with no on the record EOJ [ends of justice] findings, there were more than enough non-excludable days, which constitute a clear violation of [the Speedy Trial Act]." (Docket Entry No. 493, p. 20.)

In responding to this claim, trial counsel testified in his affidavit as follows:

As best as I understand Castro-Flores's contention of a Speedy Trial Act violation, it is that there were "no on the record EOJ findings."

Mr. Castro-Flores is incorrect that there were "no on the record EOJ findings." To the contrary, each such Order of this Court contained that precise finding:

> Pursuant to the Speedy Trial Act, 18 U.S.C. §3161(h)(8)(A), the Court finds that the ends of justice which will be served by allowing the defendants additional time in which to prepare this case outweigh the best interest of the public and the defendants in a speedy trial.

Doc. No. 117 (1/22/13); Doc. No. 127 (2/26/13); Doc. No. 165 (5/13/13); Doc. No. 181 (9/6/13);Doc. No. 219 (10/3/13); Doc. No. 275 (12/24/13).

Insofar as Castro-Flores means "on the record" to refer to a live hearing, I respond that 1) excludable delay motions are rarely set for live hearing and, also, that I do not know why either party would have requested a hearing on this sort of routine motion in his case and 2) on the one count in which Castro-Flores plead guilty, he was specifically apprised of his "speedy trial" rights:

> THE COURT: You would give up the right to claim that you were subjected to an illegal search and seizure, that you gave an unconstitutional confession, or that your right to a speedy trial was violated.
>
> This is not a complete list, just a few examples; but I want you to clearly understand that if you plead guilty on this count, you will not be able to raise these or similar defenses later on with respect to this count of conviction. Do you understand that?
>
> DEFENDANT: Yes, Your Honor.

Doc. No. 462, pp. 12–13.

(Docket Entry No. 499, pp. 4–5.)

Contrary to Defendant's allegations, and as correctly noted by counsel in his affidavit, this Court made "ends of justice" findings of record as to the six continuances in this case. These were excludable delays that did not result in a statutory speedy trial violation. *See* 18 U.S.C. § 3161(h)(7) (allowing courts to exclude delay "resulting from a continuance granted by any judge . . . if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." *See also United States v. Stephens*, 489 F.3d 647, 652 (5th Cir. 2007). Moreover, the Court found in each order that "the failure to grant a continuance in this case would deny counsel for the defendants the reasonable time necessary for effective preparation, taking into account the exercise of due diligence," pursuant to 18 U.S.C. § 3161(h)(8)(B)(iv). Defendant's assertions that the record fails to evince valid excludable delays are conclusory and refuted by the Court's docket and the record itself.

Defendant's bare assertions that the continuances and other excludable delays were unnecessary are unsupported in the record and insufficient to establish deficient performance by trial counsel. Defendant further fails to establish that, had counsel pursued a statutory speedy trial motion, this Court would have granted the motion or have erred in denying the motion. Defendant shows neither deficient performance nor actual prejudice under *Strickland*.

In his response to the Government's motion, Defendant states that the Government failed to address his claims regarding his constitutional speedy trial protections. (Docket

Entry No. 506, p. 7.) He further argues that trial counsel never discussed the continuances with him or explained his speedy trial rights. He does not controvert the Government's arguments and evidence showing that this Court made "ends of justice" findings of record or that Defendant was brought to trial within seventy days, given the excludable delays of record. In any event, Defendant fails to establish that, had counsel pursued a constitutional speedy trial motion, this Court would have granted the motion or have erred in denying the motion. Nor does Defendant establish that, but for counsel's alleged failure to discuss the continuances or speedy trial provisions with him, there is a reasonable probability that the results of his trial would have been different. Defendant shows neither deficient performance nor actual prejudice under *Strickland*, and habeas relief is unwarranted.

### *Ineffective Assistance of Appellate Counsel*

Defendant complains that counsel on appeal failed to challenge his alleged 18 U.S.C. § 942(c) firearm convictions by utilizing the Supreme Court's decision in *Johnson v. United States*, ___ U.S. ____, 135 S. Ct. 2551 (2015). However, in a separate ruling, this Court determined that *Johnson* is inapplicable to Defendant's convictions and sentencing and that the decision provides him no basis for re-sentencing. (Docket Entry No. 486.) Nor does Defendant establish that, but for appellate counsel's failure to raise *Johnson* on direct appeal, there is a reasonable probability that the result of the appeal would have been favorable. Consequently, Defendant establishes neither deficient performance nor prejudice regarding appellate counsel's arguments on appeal, and habeas relief is unwarranted.

*Conclusion*

The Government's motion to dismiss (Docket Entry No. 503) is GRANTED and Defendant's section 2255 motion for relief (Docket Entries No. 492, 493) is DISMISSED WITH PREJUDICE. A certificate of appealability is DENIED.

Civil Action No. H-16-3766 is ORDERED ADMINISTRATIVELY CLOSED.

Signed at Houston, Texas on October 6, 2017.

Gray H. Miller
United States District Judge