IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL ACTION NO. H-12-614-4 |
| | § | |
| SAMUEL CASTRO-FLORES | § | |

MEMORANDUM OPINION AND ORDER

Defendant, a federal prisoner proceeding pro se, filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(C)(1)(A). (Docket Entry No. 530.) However, he largely raises ancillary complaints regarding his underlying criminal prosecutions, convictions, sentences, and his prison medical care.

Having considered the motion, the record, matters of public record, and the applicable law, the Court DENIES the motion for compassionate release and DISMISSES WITHOUT PREJUDICE defendant's habeas challenges to his convictions and sentences and his civil complaints regarding his prison medical care.

Background

Defendant is a 48-year-old male prisoner currently confined at the Bureau of Prisons ("BOP") Lee USP, a high-security facility in Virginia. Defendant is serving a life sentence imposed by this Court on January 29, 2015, following his convictions for illegal reentry, conspiracy to commit hostage taking, conspiracy to harbor illegal aliens, conspiracy to transport illegal aliens within this country, conspiracy to use a firearm during a crime of violence, brandishing a firearm during a crime of violence, five counts of

hostage taking, five counts of harboring an illegal alien, and two counts of transporting an illegal alien within this country. The convictions were affirmed on direct appeal, and his motions for relief under section 2255 were denied or dismissed.

As extraordinary and compelling reasons for a compassionate release, defendant states that he has chronic back pain and sinusitis, Crohn's disease, and hemorrhoids.

Defendant asks the Court to grant his motion, reduce his sentence to time served, and release him from prison so he may return home.

## Legal Standards

Defendant brings his motion for a sentence reduction and compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), which allows a court in its discretion to modify a sentence under certain circumstances. Under the current version of the statute, a motion may be made by either the Director of the BOP or by a prisoner after the prisoner has fully exhausted his administrative rights. 18 U.S.C. § 3582(c)(1)(A).

Compassionate release under section 3582(c)(1)(A) authorizes a court to modify a defendant's term of imprisonment if the court finds "extraordinary and compelling reasons warrant such a reduction," and that "a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. §§ 3582(c)(1)(A), (A)(i). Sentencing Guideline section 1B1.13(2) authorizes a sentence reduction only if the defendant "is not a danger to the safety of any other person or the community, as provided in 18 U.S.C. § 3142(g)."

The Sentencing Commission has addressed in a policy statement what qualifies as "extraordinary and compelling reasons" to release a defendant from BOP custody. See U.S.S.G. § 1B1.13.[1] The relevant policy statement outlines four categories of circumstances that may constitute "extraordinary and compelling reasons" for a sentence reduction, based on terminal medical conditions, age, family circumstances, and "other reasons." U.S.S.G. § 1B1.13, Application Note 1. However, the court's reference to the Guidelines is only one step in its own determination of whether extraordinary and compelling reasons warrant a reduction of a defendant's sentence. The court is free to determine whether a defendant's particular medical condition constitutes extraordinary and compelling reasons for a compassionate release. See United States v. Gonzalez, 819 F. App'x 283, 284 (5th Cir. Sept. 4, 2020); United States v. Hernandez, 645 F.3d 709, 712 (5th Cir. 2011) ("[T]he decision whether to ultimately grant a modification is left to the sound discretion of the trial court."). A defendant in a motion brought under section 3582(c)(1)(A) has the burden to establish that relief is warranted in his case.

The court must also consider the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable. The court must base its decision on "a thorough factual record" and "must provide specific factual reasons, including but not limited to due consideration

---

[1] The Fifth Circuit Court of Appeals has not determined whether Sentencing Guideline § 1B1.13 applies to motions for compassionate release, and recognizes that there is a split of authority as to the issue. See, e.g., United States v. Gowdy, 832 F. App'x 325, 327 (5th Cir. Dec. 28, 2020).

3

of the § 3553(a) factors, for its decision." United States v. Chambliss, 948 F.3d 691, 693 (5th Cir. 2020). These factors include the nature and circumstances of the offense; the history and characteristics of the defendant; and the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and provide the defendant with needed training, medical care, or other treatment in the most effective manner. 18 U.S.C. § 3553(a). The policy statement recognizes that the sentencing court "is in a unique position to determine whether the circumstances warrant a reduction . . . after considering the factors set forth in 18 U.S.C. § 3553(a) and the criteria set forth in this policy statement[.]" U.S.S.G. § 1B1.13 cmt. 4.

Thus, a defendant may be eligible for compassionate release under section 3582(c)(1)(A) if the court finds "extraordinary and compelling reasons" to warrant a sentence reduction, the defendant is found not to pose a risk of danger to the community, and a sentence reduction is consistent with United States Sentence Commission policy statements.

## Analysis

Exhaustion

Defendant submitted copies of his administrative requests for a compassionate release, which indicate that the requests were denied. The Court finds that defendant exhausted his administrative remedies prior to filing the pending motion.

Extraordinary and Compelling Reasons

Defendant asserts entitlement to a compassionate release based on chronic back pain and sinusitis, Crohn's disease, and hemorrhoids. He also states that his wife underwent chemotherapy for chest cancer. (Docket Entry No. 530, pp. 37–39.) His PSR indicates that His wife's chemotherapy took place in 2015, and that her sisters took care of her. (Docket Entry No. 387, ¶ 197.) His two children were cared for by their aunts. Id.

The medical records submitted by defendant in support of his motion do not indicate that he has chronic sinusitis, Crohn's disease, or hemorrhoids, or that he is on any medications. (Docket Entry No. 503-2.) The records do reflect his complaints of back pain, and include copies of radiology reports for spinal x-rays taken in 2018. X-rays taken on October 9, 2018, showed mild to moderate lumbar disc space narrowing, with minimal to mild lumbar facet arthropathy. Id., p. 4. No treatment was recommended.

The Centers for Disease Control and Prevention ("CDC") has not recognized individuals with back pain, disc space narrowing, or facet arthropathy as having an elevated risk of death or serious injury as to COVID-19. Defendant does not show that he has an elevated risk for death or serious injury should he contract COVID-19, or that his ability for self-care has been impaired. Further, the fact that his wife underwent chemotherapy in 2015 provides no basis for granting defendant relief. Defendant's concerns as to COVID-19 appear to be general concerns which, standing alone, do not

5

warrant a compassionate release.  See United States v. Thompson, 984 F.3d 431, 435 (5th Cir. 2021).

Defendant is confined at Lee USP, which currently reports having one prisoner with a positive COVID-19 test result.  A total of 532 prisoners have recovered from COVID-19 infections at the facility, with no reported inmate deaths.[2]  Although defendant expresses legitimate and common concerns regarding COVID-19, he does not establish that his facility cannot manage an outbreak or that the facility could not treat him if he were to contract the virus.  It appears from the BOP's online statistics that Lee USP is handling the pandemic appropriately.  Moreover, the BOP reports that it is working with the CDC and the federal government's COVID-19 Vaccine/Therapeutics Operation to ensure the BOP remains prepared to receive and administer the COVID-19 vaccine as it is made available.  The BOP has received 107,675 doses and administered 109,657 doses of the COVID-19 vaccine as of April 1, 2021.[3]  Defendant does not establish that his current confinement creates an elevated risk of death or serious injury as to COVID-19.

Defendant's conclusory challenges to the validity of his underlying prosecution, sentences, and convictions do not constitute extraordinary and compelling reasons for a compassionate release.

---

[2]See https://www.bop.gov/coronavirus/  (accessed on April 1, 2021).

[3]See https://www.bop.gov/coronavirus/  "COVID-19 Vaccine Implementation" (accessed on April 1, 2021).

No extraordinary and compelling reasons for a compassionate release are shown by defendant's factual circumstances. Nevertheless, the Court will address the additional factors under 18 U.S.C. § 3142(g) and 18 U.S.C. § 3553(a), below.

Danger to the Community

Defendant was convicted of criminal offenses that included use of firearms and physical violence. Moreover, defendant committed the offenses while on supervised release from an earlier conviction in United States v. Castro-Flores, C.A. H-08-718 (S.D. Tex.). Defendant's lengthy criminal history as set out in the PSR shows an unabated propensity for committing crimes. Defendant's criminal behavior has not been deterred by his numerous convictions, deportations, and incarcerations.

It is clear to the Court that defendant would remain a danger to the community if he were released from prison.

Sentencing Factors

The facts underlying the criminal offenses in this case are harrowing and unforgettable. As aptly summed up by the Government during sentencing,

> You know, in the scheme of hostage taking cases and alien smuggling organizations, this has got to be one of the worst of the worst. And we heard [during trial] tremendously awful facts. The aliens were being held in the deplorable conditions, one of the worst of the worst houses, being forced to defecate and urinate in plastics bags, strip down to their underwear, women including in front of men who had guns, kept, locked in a room in their underwear with boarded-up windows, doors tied shut from the outside, always guarded, rarely fed, not allowed the use of a shower, being

7

threatened with physical harm, being threatened with death, being threatened with sexual abuse, guns actually being used.

We had testimony from the victim Pedro Arnulfo Ruiz that this defendant pistol whipped him in his head. That is the witness you will recall was very credible and at first didn't recognize the defendant because the defendant altered his appearance immediately before trial.

Victims were sexually abused in this case, and the defendant was made aware about it, did nothing to stop it and just did it to keep on making money.

This defendant was a leader/organizer. Every witness that came in described him to be the boss. He was smart and he was cold and he made money.

These people were not just treated like animals. They were treated worse than animals. You wouldn't treat a dog like that.

And I know the Court will recall that there was actually a rare video of these victims being locked up like cattle – or chivos – goats in a room that was taken with a cell phone[.] And they say a picture, a video speaks a thousand words, so the Court will recall that when deciding where this ranks in the scheme of hostage taking operations.

(Docket Entry No. 456, pp. 26–27.)

Defendant is an illegal alien with an extensive history of criminal activity, including numerous illegal entries into the United States. (Docket Entry No. 387, p. 39–41.) He was arrested and deported to Mexico in 2002, 2004, 2006, and 2011, and admitted to returning illegally to the United States in 2012. Id., ¶ 199. A detainer is currently lodged against him for deportation to Mexico. (Docket Entry No. 530-1, p. 4.) Moreover, as noted earlier, defendant committed the offenses in this case while on supervised release from an earlier federal conviction in United States v. Castro-Flores, C.A. H-08-718 (S.D.

Tex.). The Court revoked defendant's supervised release in that case and imposed a 24-month term of imprisonment to run consecutively to defendant's life sentence in the instant case.

In the instant case, defendant's criminal history Category IV, combined with an offense level of 43 – the highest possible level – resulted in a sentencing range of "life" under the sentencing guidelines. Id., ¶ 179. The Court imposed a life sentence.

The sentencing factors in this case weigh very heavily against the granting of a compassionate release. Reducing defendant's sentence from a life sentence to time served would not promote respect for the law, provide just punishment, or afford adequate deterrence.[4]

## Ancillary Claims

Defendant challenges at length the validity of his criminal prosecution, convictions, and sentences. Defendant must raise these claims in a properly and timely-filed section 2255 habeas proceeding or other applicable post-judgment motion unrelated to a compassionate release. The claims are DISMISSED WITHOUT PREJUDICE.

---

[4]Defendant argues that the Fifth Circuit's decision in United States v. Picazo-Lucas, 821 F. App'x 335, 2020 WL 4462072 (5th Cir. Aug. 3, 2020), would require a lower sentence if he were sentenced today. In Picazo-Lucas, the court held, in an unpublished opinion in context of a direct appeal, that "hostage taking cannot serve as a predicate crime of violence for a § 924(c) conviction as a matter of law." Id. at 340. On July 22, 2020, the Fifth Circuit granted defendant leave to file a successive section 2255 motion to challenge his sentence under Picazo-Lucas. To-date, defendant has not filed the successive motion with this Court. The Court will address the applicability of Picazo-Lucas should defendant raise the issue in a timely and properly-filed section 2255 motion. The Court does find, however, that applicability of Picazo-Lucas would not change its disposition of the instant motion for a compassionate release.

Defendant also raises claims for deliberate indifference to his medical needs for incidents that occurred at Lee USP in Virginia. His claims cannot be addressed in context of a habeas proceeding, and must be pursued, if at all, in a timely-filed civil lawsuit brought in a court of proper jurisdiction. The claims are DISMISSED WITHOUT PREJUDICE.

## Conclusion

For these reasons, defendant's motion for compassionate release (Docket Entry No. 530) is DENIED. Defendant's habeas challenges to his convictions and sentences are DISMISSED WITHOUT PREJUDICE. Defendant's civil rights claims for deliberate indifference to his medical needs are DISMISSED WITHOUT PREJUDICE.

Signed at Houston, Texas, on April __16__, 2021.

_____
Gray H. Miller
Senior United States District Judge